## UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | Bankruptcy No. 05-38469-JAD |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ———————————————— | X | |
| | ) | |
| CONSTANCE K. ELLIOTT; | ) | Doc. Nos. 170, 172 |
| PATRICIA J. KIESEWETTER; | ) | |
| LINTON A. ELLIOTT; JONATHAN | ) | |
| B. ELLIOTT; and CHARLES L. | ) | |
| ELLIOTT, | ) | |
| Movants, | ) | |
| - v - | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | |
| | ) | |
| Respondent, | ) | |
| ———————————————— | X | |
| CARLOTA M. BOHM, TRUSTEE FOR | ) | |
| THE ESTATE OF JAYNE H. | ) | |
| KIESEWETTER, | ) | |
| | ) | |
| Movant, | ) | |
| | ) | |
| - v - | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | |
| | ) | |
| Respondent. | ) | |
| ———————————————— | X | |

## MEMORANDUM OPINION

The matter before the Court are the Objections to Amended Exemptions filed by the Chapter 7 Trustee (Doc. #170) and by creditors Constance K. Elliott, Patricia J. Kiesewetter, Linton A. Elliot, Jonathan B. Elliott and Charles L. Elliott (the "Elliott Creditors")(Doc. #172). At the heart of this dispute is Ms. Jayne Kiesewetter's interest in a trust (the "Marital Trust") established by her late

00005111.WPD

husband, Sydney M. Barton.  Ms. Kiesewetter (the "Debtor") has exempted her interest in income received from the Marital Trust based on alleged spendthrift provisions of that trust; she has also asserted that any additional property interest she may have in the Marital Trust, including its principal,[1] is not property of her bankruptcy estate.  For the reasons expressed below, the Objections to Amended Exemptions shall be denied.

## I.

The Elliott Creditors are siblings and nephews of William B. Kiesewetter, Jr., who is the Debtor's husband.  Various disputes and associated litigation between the Debtor and her husband, William B. Kiesewetter, Jr., and the Elliott Creditors have now spanned in excess of fifteen years.  In recent years, the disputes have wound their way through various courts, and then into this Bankruptcy Court due to the voluntary Chapter 11 filing of the Debtor.

The record reflects that the Debtor filed her voluntary Chapter 11 petition on October 14, 2005.  At the time of the filing of the petition, the Elliott Creditors had a claim against the Debtor of $7,426,807.03.[2]

---

[1] For purposes herein, the interest income the Debtor has received or will receive from the Marital Trust and the res or corpus of the Marital Trust are collectively referred to as the "Marital Trust Assets."

[2] The Elliott Creditors obtained judgments against the Debtor and her nondebtor husband in 2003 in the United States District Court for the Western District of Pennsylvania. The judgments resulted from actions brought for an accounting and fraudulent transfer in connection with alleged misappropriation of Kiesewetter family assets. After the filing of this bankruptcy, the Elliott Creditors obtained a determination of nondischargeability as to the monetary amount of the district court judgment determined to be owed by the Debtor. (See

(continued...)

This bankruptcy case was subsequently converted to a Chapter 7 liquidation on March 26, 2007. (See Doc. #122). Upon conversion, Carlota M. Bohm was appointed Chapter 7 Trustee. (See Doc. #124). On October 15, 2005, the Debtor filed her original claim of exemptions pursuant to the federal exemptions provided by 11 U.S.C. §522(b)(1). By her claim of exemption, the Debtor is seeking to exempt her interest in the Marital Trust Assets. The exemption cited as its basis 11 U.S.C. §541 and Fla. Stat. 222.13. The Elliott Creditors and the Chapter 7 Trustee filed objections to the exemptions.[3] (See Docs. #142, 156). An Amended Schedule C was then filed on July 30, 2007 which sought to exempt Debtor's interest in the Marital Trust Assets on the basis of state exemptions pursuant to 11 U.S.C. §522(b)(2) and Amended Schedule C asserted those exemptions as provided for by Florida law. (See Doc. #161). Specifically, the Amended Schedule C listed the trust principal as $2.3 million dollars and asserted Florida "common law" as the basis for the amended exemption. (Id.)

The Elliott Creditors and the Chapter 7 Trustee then objected to the Amended Exemptions. (See Doc. ## 170,172). Those objections to exemptions are the subject of the instant dispute; and a trial on the merits with respect to same

---

[2](...continued)
Adv. No. 07-2202JAD, Doc. #34).

[3] An extension of time to file objections to exemptions was granted until the first date set for hearing on confirmation of the Debtor's plan of reorganization. No plan was filed. The case was ultimately converted and the Section 341 meeting of creditors set for April 23, 2007 was not held. The meeting was rescheduled to June 11, 2007.

was held on May 14, 2010.  A post-trial hearing was held on July 30, 2010.

## II.

Prior to marrying William Kiesewetter in January 1990, the Debtor was married to the late Sydney M. Barton ("Mr. Barton").  Following the death of Mr. Barton in 1984, his will was recorded in the state of Florida.  The Marital Trust that is the subject of this dispute is a trust created by the July 1, 1982 Last Will and Testament and the March 10, 1983 Codicil of Mr. Barton.  The Marital Trust provided for the Debtor to receive interest income generated by the trust corpus at least quarter annually throughout her life.  (See Movants' Ex. 1, Article TENTH (B))[4].  The Marital Trust also provided for the Debtor to receive distributions of principal to the extent the discretion of the trustees deemed it advisable. (Id.)

The Chapter 7 Trustee contends that the Debtor's interest in the Marital Trust Assets is property of the estate.  She further contends that the exemption itself is confusing since the Debtor asserts that the Marital Trust Assets are not property of the estate but also exempts the asset. (See Doc. #170, ¶6).  Further, the Chapter 7 Trustee contends that as to the Debtor's attempt to exempt interest income, the exemption is improper since no specific statutory basis is cited. (See Doc. #170, ¶7).

The Elliott Creditors contend that the Marital Trust Assets at issue are not excepted from the property of this estate because the Marital Trust does not fall

---

[4] All references to exhibits are to Movants' exhibits unless otherwise noted.

within the parameters of a spendthrift trust.[5]  Specifically, the Elliott Creditors

contend that both the language of the Barton Will and the conduct of both the

Debtor and the trustees of the Marital Trust render any spendthrift provision

invalid.  (See Doc. #170, ¶¶30-31).

The Debtor, however, contends that her only claimed exemption is the

income distribution from the Marital Trust. (See Doc. #198, ¶5; Doc. #199, ¶3).

She contends that she is not asserting an exemption in the trust corpus since it

is not property of the estate in the first instance.

## III.

Pursuant to Federal Rule of Bankruptcy Procedure 4003(c), the party

objecting to the debtor's exemption(s) has the burden of proving that the

exemptions are not proper. See Fed. R. Bankr. P. 4003(c).  Accordingly, the

Chapter 7 Trustee and the Elliott Creditors bear the burden that the exemption(s)

taken by the Debtor, Jayne Kiesewetter, in the Marital Trust Assets are not

proper.[6]  The Debtor has the burden of demonstrating that the subject property

---

[5] The Elliott Creditors asserted two additional arguments in their Objection. They are:
(1) the Debtor's interest in the Marital Trust has already been determined by the U.S. District
Court to be under a constructive trust for the benefit of the Elliott Creditors; and (2) the Debtor
claimed a Pennsylvania domicile for purposes of filing her petition and therefore could not take
exemptions based on Florida law.  Based on the evidence adduced at trial, the briefing and the
arguments presented, it appears that the Elliot Creditors have not pursued their arguments
concerning constructive trust and domicile.  Therefore, the Court will focus its attention on the
Elliott Creditors' contention that the Marital Trust does not fall within the provisions of a
spendthrift trust.

[6] Through the course of this dispute, the Chapter 7 Trustee and the Elliott Creditors
aligned their efforts and counsel for the Elliott Creditors bore the laboring oar in the litigation.

interest is excluded from property of the estate. In re Adams, 302 B.R. 535 (B.A.P.

6th Cir.2003).

All legal and equitable interests of a debtor become property of the

bankruptcy estate pursuant to 11 U.S.C. §541(a) upon the filing of a bankruptcy

petition.  Where a debtor has an interest in a "spendthrift" trust, that interest is

excluded from property of the estate pursuant to 11 U.S.C. §541(c)(2).  Section

541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the

debtor in a trust that is enforceable under applicable nonbankruptcy law is

enforceable in a case under this title."  By operation of this statute, a debtor's

interest in a spendthrift trust will not be part of the bankruptcy estate where

applicable nonbankruptcy law would enforce the restrictions on alienation as set

forth in a spendthrift trust.

The parties appear to have agreed that the applicable nonbankruptcy law

is that of Florida.  The settlor of the trust at issue in this case resided in Florida

and the trust was established, recorded and primarily administered in Florida.

The validity of spendthrift provisions has long been recognized in the state

of Florida.  Waterbury v. Munn, 32 So. 2d 603 (1947).  Spendthrift trusts have

been described as:

> [t]hose trusts that are created with a view of providing a fund for the
> maintenance of another, and at the same time securing it against his
> own improvidence or incapacity for self-protection.  The provisions
> against alienation of the trust fund by the voluntary act of the
> beneficiary, or invitum by his creditors, are the usual incidences to
> such trusts.

Croom v. Ocala Plumbing & Elec. Co., 57 So. 243, 244 (1911); see also In re

Schwen, 240 B.R. 754 (D. Minn. 1999)(applying Florida law); In re Cattafi, 237

B.R. 853 (Bankr. M.D. Fl. 1999).

Florida recently enacted the Florida Trust Code, Chapter 736, Florida

Statutes (2009) which became effective on July 1, 2007 (the "Trust Code").[7]  The

Trust Code applies to "all trusts created before, on or after such date." F.S.A.

§736.1303.  Spendthrift provisions were statutorily recognized in the Trust Code.

F.S.A. §736.0502.  The statute further provides that a "spendthrift provision" is

valid only if both voluntary and involuntary transfers of a beneficiary's interest are

restrained.  Id.    However, the requirement regarding both voluntary and

involuntary transfers is not applicable to any trust executed prior to the effective

date and therefore does not apply to the analysis here since the Marital Trust was

executed prior to 2007.  Id.; see also In re Ciano, 433 B.R. 431 (Bankr. N.D. Fla.

2010).

## IV.

There is no magic language required to create a spendthrift trust.  It is

sufficient if the trust provides that the interests of the beneficiary are held subject

to a spendthrift trust and restrains alienation.  See F.S.A. §736.0502(2).  Where

a valid spendthrift provision exists, a beneficiary may not transfer his or her

---

[7] The Pennsylvania statute governing trusts found at 20 Pa. C.S.A. §§7701, *et. seq.* is
comparable to the Florida Trust Code at F.S.A. §§736.0101 *et. seq.* as both are based on the
Uniform Trust Code.

interest in the trust.  Nor can a creditor reach the trust distribution until it is received by the beneficiary.  F.S.A. §736.0502(3).

The Marital Trust at issue was established in Article TENTH of the Will at Subdivision (B) which stated:

> If my wife shall survive me, my trustees shall hold the Marital Share as the principal of a separate trust which is hereinafter referred to as the Marital Trust. My trustees shall invest and reinvest the principal of the Marital Trust and, from the date of my death, pay the net income therefrom, quarter-annually or at such more frequent intervals as my trustees shall deem appropriate, to my wife during her life.  My trustees shall also pay to my wife at any time or times so much, including the whole or a lesser part, of the principal of the Marital Trust as my trustees (other than my wife) shall, from time to time and in the absolute discretion of my trustees, deem necessary or advisable for the maintenance, welfare and comfort of my wife or for any other purpose which my trustees shall deem to be worthwhile and in the best interests of my wife, having primary regard for the best interests of my wife, rather than for remainder or other successor interests.

The Trustees of the Trust were set forth in the Codicil to the Will.  Paragraph ONE of the March 10, 1983 Codicil at Subdivision (A) provided that the Trustees would be Elizabeth Jayne Barton (the Debtor herein), Herbert Gerstein and Bessemer Trust Company of Florida ("Bessemer") or "such one or more of them as shall from time to time be available and willing to serve, as personal representatives of this will and trustees of each trust created hereunder." Further, Article SECOND, Subdivision (G) of the Barton Will as amended by the Codicil states that "[e]xcept as otherwise specifically provided herein, any decision by my personal representatives or by my trustees made pursuant to authority granted under this will shall be made by a majority vote of those personal representatives or those trustees entitled to participate therein." (See Ex. 1, Codicil, Article

TWO(G)).

At the heart of this dispute is the spendthrift provision set forth in Subdivision (C) of Article FOURTEENTH of the Will.  If the spendthrift provision is valid under Florida law, the Marital Trust Assets are excluded from property of the estate pursuant to 11 U.S.C. §541(c)(2).  The relevant provision of the Barton Will states as follows:

> Except as otherwise provided herein, the right of any person to receive any amount, whether of income or of principal, pursuant to any of the provisions of this will shall not, in any manner, be anticipated, alienated, assigned or encumbered and shall not be subject to any legal process or bankruptcy or insolvency proceeding or to interference or control by creditors or others.  Notwithstanding the foregoing, my said wife shall, by written instrument signed and acknowledged by her and delivered to my trustees, have the right, exercisable at any time or times that she shall desire to do so, to assign all or any portion of her income interest in the Marital Trust to any one or more of my descendants and in equal or unequal shares (if there be more than one).

It appears that this language sets forth the necessary restraint on alienation required for a spendthrift trust.

## V.

However, in their Post Trial Memorandum Brief and oral argument, the Chapter 7 Trustee and Elliott Creditors contend that the language of the Barton Will suggests that the Marital Trust was not intended to be a spendthrift trust. It is argued that the language establishing the Marital Trust differs from language utilized to establish other trusts within the Barton Will.  The contention made by the Elliott Creditors and the Chapter 7 Trustee is that this difference shows that the Marital Trust is not spendthrift in nature.

The other trusts established in the Barton Will were for Mr. Barton's daughter and two grandchildren (the "Descendant Trusts"). In the Descendant Trusts, the descendants were only beneficiaries. They were not also trustees (as is the Debtor in the Marital Trust). To the extent that a descendant beneficiary was also a trustee of any trust, the powers of any such trust were to rest exclusively with the other trustees who were not beneficiaries. (See Ex. 1, Article ELEVENTH (C)). Distributions to the descendants of both principal and interest were wholly within the discretion of the independent trustees.

The Trustee and the Elliott Creditors argue that these differences between the Marital and Descendants Trusts show that the Marital Trust was not set up to be a spendthrift trust. It is argued that Mr. Barton understood how to keep separate the interests of a beneficiary from that of a trustee and the ability to control the distributions.

The Court is unpersuaded by the arguments concerning the differing provisions between the trusts and the language used to establish them. The principle of a spendthrift trust is concerned with the imposition by the settlor of restraint on the transfer of the beneficiary's interest. The purpose of a spendthrift trust is for protection of the beneficiary from creditors as well as from the beneficiary him or herself. See e.g., In re Schwen, supra. The plain language in the Barton Will at Article FOURTEENTH, Subdivision (C) evidences this purpose and establishes a spendthrift provision.

In order for a spendthrift trust to be valid, the beneficiary cannot be possessed of the disposition and control of the trust. Otherwise, the interest of the trust and the beneficiary would merge. See e.g.,18 Fla. Prac., Law of Trusts §14:2(a); see also Schwen, 240 B.R. at 757.

While the Debtor is both a beneficiary and co-trustee of the Marital Trust, unlike the beneficiaries of the Descendant Trusts who are beneficiaries only, this is not determinative of the validity of a spendthrift trust provision. If the Marital Trust had no other co-trustees, the argument made by the Chapter 7 Trustee and the Elliott Creditors might be more meritorious. However, the Marital Trust had two other co-trustees along with the Debtor - Herbert Gerstein and Bessemer. The fact that a co-trustee is also a beneficiary, does not render a spendthrift trust invalid. See e.g., Schwen, supra; see also McCauley v. Hersloff (In re Hersloff), 147 B.R. 262, 266 (Bankr. M.D. Fl. 1992).

In Hersloff, supra, the bankruptcy trustee argued that a spendthrift trust was invalid as to the debtor because the debtor was both a trustee and a beneficiary of the trust. As such, the bankruptcy trustee contended that the debtor exerted control over the trust thereby defeating its spendthrift nature. The trust in Hersloff had three trustees and contained a provision that allowed for the invasion of principal for the benefit of beneficiaries in the discretion of the trustees of the trust. The bankruptcy court concluded that regardless of whether a decision was made by majority or unanimous vote, the debtor alone did not have

sufficient discretion to effect a distribution since the debtor individually could not dictate the outcome. The court stated that "[a]lthough a beneficiary's ability to exercise something less than 'absolute' control over a spendthrift trust may destroy its spendthrift character, something greater than being one of three trustees, as the debtor here is, is required to effect this result." 147 B.R. at 266.[8]

As in Hersloff, this Court finds that the overlapping roles of this Debtor do not invalidate the spendthrift provision. The Debtor is unable to receive a principal distribution absent the consent of at least one co-trustee. The Barton Will provided that the Debtor be permitted distributions of Marital Trust principal for her maintenance, welfare or comfort in the discretion of the trustees *other than the Debtor*. In fact, the record established at trial reflects that requests for principal distributions were made by the Debtor to Bessemer, the corporate trustee who, either independently or with the third co-trustee, Herbert Gerstein, made determinations regarding distribution.[9] Some of those requests were denied, as described more fully below. The Debtor's dual role as a co-trustee and beneficiary therefore did not result in an ability to compel principal distributions on her own.

_____

[8] The Hersloff court was also not persuaded by the possibility that in the future the number and identity of trustees could change leaving the debtor therein in control of the trust. That possibility was deemed too remote and those facts were not in existence at the time of filing.

[9] Bessemer was the corporate co-trustee from the existence of the Marital Trust until October of 2007 when PNC was substituted as the corporate trustee.

It is also contended by the Elliott Creditors and the Chapter 7 Trustee that various enumerated powers given to the trustees of the Marital Trust invalidate the spendthrift provision. Those powers relied upon as defeating the spendthrift nature are asserted to be in Article FOURTEENTH(A)(1) - (4), (14)-(17) and (21)-(24). Those provisions allow for the personal representatives "...from time to time and in their absolute discretion" to: retain, sell, lease or improve property ((1)-(4)); exercise tax election rights, make allocations between principal and income, consolidate funds, make principal payment in kind or in money ((14)-(17); to apply for the benefit of any person any amount which could be payable directly, remove property from the state, maintain businesses in which the decedent had an interest at the time of death, and exercise any power in which an owner of such property would have (21)-(24).

A review of these enumerated powers does not reveal any power provided to the trustees that would impact the anti-alienation provision of the Marital Trust. Rather, the enumerated powers appear to be for purposes of allowing appropriate administration of the will and assets thereunder versus distribution of the Marital Trust Assets. Contrary to the assertions of the Elliott Creditors and Chapter 7 Trustee, the powers highlighted do not allow for a trustee to direct distribution of principal to him or herself or for one's benefit. Moreover, pursuant to Subsection (B) of Article TENTH of the Barton Will, decisions regarding principal distributions must be made by trustees other than the Debtor.

**VI**.

An anti-alienation clause is rendered ineffective where a beneficiary has the ability to control principal distributions or terminate the trust. See In re Miller v. Kresser, 34 So. 3d 172 (Fla. Dist. Ct. App. 4th Dist. 2010); Putney v. May (In re May), 83 B.R. 812 (Bankr. M.D. Fla. 1988); Dollinger v. Bottom (In re Bottom), 176 B.R. 950 (Bankr. N.D. Fla. 1994). The Trustee and Elliott Creditors also assert that the conduct of the trustees invalidates any spendthrift provision of the Marital Trust. In support of this contention, the objectors point to the purported ability of the Debtor to control the distributions of principal received by the Debtor.[10]

Over the life of the Marital Trust, the Debtor requested and received numerous principal distributions. In some instances, the distributions were treated as loans by Bessemer and the Debtor was required to sign a note to repay the trust.[11] The first request was in 1988 for an amount of $160,000 toward the purchase of a condominium in Vail, Colorado. (See Ex. 9). The request was approved by Bessemer; however, a Demand Note payable to the Trustees of the Marital Trust for the $160,000 was signed by the Debtor. (See Ex. 11). The note

---

[10] Distributions of interest income were nondiscretionary as to the Debtor and were to be made at least quarter annually. (See Ex. 1, Article TENTH Subdivision(B)). The Debtor did not have control over whether distributions of interest income were made to her or on her behalf.

[11] However, upon the substitution of PNC as corporate trustee, PNC apparently did not treat any of the outstanding notes as accounts receivables. (See Deposition of Faith Matous, pp. 109-112; see also footnotes to Exs. 112, 115).

was satisfied according to the account statements of Bessemer. (See Ex. 105).[12]

The next significant distribution of principal was not until eleven years later. In 1997, further sums in the amount of $38,000 were distributed to the Debtor from trust principal. (See Ex. 107, App. "C"). In April of 1997, funds from income of the Marital Trust in the amount of $27,000 were transferred to principal of the Marital Trust. (See Ex. 19). Therefore, there was a net principal distribution from the Marital Trust to the Debtor of $11,000 in 1997. (See Ex. 107, App. "C"; Doc. #296, App. "C"). In 1998, principal distributions of $6,000 were made. (See Doc. 296, App. "D"). Distributions of principal were made in 1999 of $8,400. In July, 1999, transfers of funds in the amount of $5,400 from income of the Marital Trust was repaid to principal of the Marital Trust. (See Ex. 109, Doc. #296, App. "E"). In 2004, approximately twenty years after the commencement of the Marital Trust, principal distributions became more frequent. In March 2004, the Debtor received a principal distribution of $10,000. Again, a demand note to Bessemer was signed by the Debtor for repayment of the $10,000. (See Exs. 81, 112). At this time, the Debtor and her current husband, William Kiesewetter, were in litigation with the Elliott Creditors who were seeking to execute on a judgment regarding the Debtor's Florida homestead. During the course of that litigation in 2004 and

---

[12] The Elliott Creditors and the Chapter 7 Trustee contend that the note was satisfied by way of various accounting transactions rather than actual repayment. (See Doc. #306, p. 13). Regardless, the Court does not find the manner in which the note was satisfied to be significant since principal distributions were within the discretion of the trustees and could be approved absent repayment by the Debtor.

2005, distributions of principal for Debtor's legal bills associated with that litigation were made to the law firm of Akerman Senterfitt totaling $83,621.62. (See Ex. 113).

In 2005 and 2006, the Debtor requested and received greater sums from principal than in previous years. The sums requested in 2005 were used, in part, to pay court ordered rent to the Elliott Creditors to allow the Debtor to remain in her residence.[13] The Debtor received principal distributions of $21,600 in 2005 for rental payments of $1,800 per month from November 2004 through September 2005. (See Ex. 115).

In 2006, the Debtor requested and received approximately $22,810 for living expenses and $28,800 for court ordered rent and home maintenance. (See Exs. 116-119).

While the Debtor received numerous distributions of principal over the life of the Marital Trust, it is significant to note that there were several requests for principal distributions by the Debtor that were not approved by Bessemer. In March of 2006, the Debtor requested $10,000 for a retainer for bankruptcy counsel that was denied. (See Ex. 50). A request of $100,000 for legal fees was

---

[13] After entry of an execution judgment and imposition of constructive trust pending such sale of Debtor's residence, the Debtor and her husband attempted to claim a Florida homestead exemption in the premises. After judgment was entered in the Florida state court in favor of the Elliott Creditors denying the exemption, an appeal was filed. A stay of execution was entered pending the appeal upon the payment of $1,800 per month rent by the Debtor and her husband. Thereafter, the Debtor filed the instant bankruptcy. Upon a motion for relief from stay filed by the Elliott Creditors, this Court granted adequate protection regarding the Debtor's homestead and continued the requirement of monthly payment of $1,800 as established by the Florida court.

00005111.WPD

also made in March of 2006.  Again, Bessemer denied that request as being an

excessive amount.  (See Ex. 51).  In August 2006 another request for bankruptcy

counsel legal fees in the amount of $26,075.75 was made.  It, too, was denied as

being excessive given the previous distributions that had been made that year in

light of the size of the trust.  (See Ex. 59).[14]  Not each and every principal request

was granted by Bessemer Trust, thus exhibiting Bessemer's willingness to exercise

veto power over Debtor's requests.[15]

---

[14]  After PNC was substituted as the corporate trustee, the requests for principal
distributions that had been denied by Bessemer were then requested from PNC and approved.
Specifically, PNC approved payments to bankruptcy counsel totaling $93,505.26.  (Payments
were made as follows: $68,246.52 on November 15, 2007 (See Ex. 95); $7,072.50 on November
15, 2007 (See Ex. 95); $10,853.75 on May 12, 2009 (See Ex. 103, May 2009 statement, p. 53);
$7,322.49 on October 14, 2009 (See Ex. 103, October 2009 statement, p. 56)).  These payments
were made postpetition directly to counsel for services rendered during the Chapter 11 and
Chapter 7 administration of this bankruptcy case.  These payments are problematic since no
application for fees had been filed or approved at the time of payment or to date.  Reasonable
compensation is to be awarded to debtor's counsel only upon application to and approval by the
court.  See U.S.C. §330; Fed.R.Bankr.P. 2016(a)(requiring an applicant to set forth a detailed
statement of services rendered and amounts requested); see also In re Engel, 124 F.3d 567 (3d
Cir. 1997)( a bankruptcy court must review application for compensation even after
employment as counsel has been approved); Fed.R.Bankr.P. 2017(b)(court may determine
whether payment of monies by the debtor to an attorney after the order for relief is excessive).
In addition, pursuant to 11 U.S.C. §329, counsel for the debtor is to disclose the compensation
paid or agreed to be paid regardless of whether the attorney applies for compensation from the
estate. In the Disclosure of Compensation Statement filed by counsel for the Debtor, it was
indicated that counsel agreed to accept the sum of $10,000 but had not yet received any
monies. (See Doc. #20).  Fed.R.Bankr.P. 2016(b) requires a supplemental Disclosure Statement
to be filed within fourteen days after any payment not previously disclosed. A lawyer's duty of
disclosure is a continuing one. See e.g., In re Berg, 356 B.R. 378, 382 (Bankr. E.D. Pa. 2006);
In re Hackney, 347 B.R. 432 (Bankr. M.D. Fla. 2006).  Where counsel fails to comply with the
requirements of disclosure and/or application set forth in the Bankruptcy Code and Rules,
courts have ordered disgorgement of those fees received as an appropriate sanction. See e.g., In
re Kisseberth, 273 F.3d 714 (6th Cir. 2001); Berg, supra.  The Court assumes that the Office of
the United States Trustee will undertake whatever investigation it deems appropriate, if any,
regarding these transactions.

[15]  While Bessemer was the corporate trustee, it appears that the Debtor would make a
formal request in order to obtain a distribution of trust principal.  Often, the request would be
in writing and have supporting documentation attached.  At least commencing in or around
2004, the request was then reduced by Bessemer to a form titled Discretionary Distribution

(continued...)

Beyond making an initial request for a principal distribution to Bessemer, it does not appear from the record that the Debtor had any control over whether the request was approved or disapproved.  As to the trust officers or principals with whom the Debtor had direct dealing, there is nothing in the record to suggest that there was anything beyond a professional business relationship with the trust officers. (See e.g., Ex. 39, p. 2)(October 4, 2004 letter to Thomas Healy, Principal of Bessemer from Debtor in which she states "it is embarrassing to have to share my struggles with you, whom I have never laid eyes on."); see also Deposition of Jayne H. Kiesewetter, p. 239, lns. 15 - 25, p. 240, lns. 1-20 (Debtor testified that she did not know who was on the SIDD Committee).  The existence of a corporate co-trustee is distinguishable from those cases in which one co-trustee is easily influenced or pressured by another co-trustee or beneficiary that is often a family member.  See e.g., In re McCullough, 259 B.R. 509 (Bankr. D. R.I. 2001)(Debtor/beneficiary had unfettered dominion and control over trust assets).  Similarly, the record does not reflect any particular influence over the substitute corporate trustee, PNC.

The Debtor's lack of involvement in the approval process of her requests for

------

[15](...continued)

Request. See Deposition of Jayne Kiesewetter, p. 231, lns. 21-25, p. 232, lns. 1-14.  The request set forth a recommendation from a trust relationship officer regarding approval or a request for guidance.  (See e.g., Exs. 39, 42, 46, 47, 49 - 59).  The Discretionary Distribution Request was then either approved or denied by a committee (indicated as the "SIDD Committee").

principal distribution is in keeping with the relevant provisions of the Marital Trust. Principal distributions were to be decided by the trustees <u>other</u> <u>than</u> the Debtor/beneficiary of the trust. (<u>See</u> Ex. 1, Article TENTH(B)). It is also in keeping with the Debtor's understanding of how principal distributions were to be administered. At her deposition, the Debtor testified that she understood the Barton Will to mean that she had no say in principal distributions and that Bessemer and then PNC controlled the principal. (<u>See</u> Deposition of Jayne Kiesewetter, p. 51, lns. 3-9; p. 54, lns. 7-8).

The Elliott Creditors and the Chapter 7 Trustee strenuously argue that contrary to the Marital Trust provision, the third trustee, Herbert Gerstein, was not consulted or involved and that his purported lack of input is somehow further evidence of the Debtor's dominion and control.

The argument concerning the involvement or lack thereof by Mr. Gerstein is unpersuasive. There is evidence of a verbal approval by a co-trustee regarding several of the requests. (<u>See</u> e.g., Exs. 34, 39, 42).[16] It is suggested by PNC that the verbal approval indicates that of Mr. Gerstein. The Elliott Creditors countered at the Post Trial hearing that the verbal approval notations on the discretionary distribution requests referred to the internal committee at Bessemer. Regardless,

---

[16] The Elliott Creditors had filed a *Motion in Limine to Exclude Inadmissible Hearsay Regarding Gerstein's Approval of Principal Distribution* seeking to exclude evidence regarding approval by Mr. Gerstein of principal distribution requests. (<u>See</u> Doc. #254). The motion was denied without prejudice. (<u>See</u> Doc. #292). In addition, the exhibits referenced were those submitted by the Elliott Creditors.

the language of the will and the record reflects that the Debtor was unable to effectuate a principal distribution absent the consent of Bessemer (and then PNC). Even absent involvement by Mr. Gerstein, the Debtor sought approval of principal distributions from the corporate trustee.[17]

Whether the provisions of the Marital Trust requiring approval were fully or properly administered is not at issue here. What is at issue is Debtor's purported dominion and control which is not altered by the presence or absence of Mr. Gerstein in the approval process as it was conducted by Bessemer. See Schwen, supra (debtor did not exercise sufficient dominion and control over trust where control was limited by presence of co-trustee and fiduciary duty to other beneficiaries.); see also Hersloff, 147 B.R. at 265 ("[w]hether decisions regarding the disposition of the principal are made by unanimous or majority vote is irrelevant because, in either circumstance, the debtor alone cannot dictate the outcome.")

It is true that at or about the time Bessemer began declining the Debtor's requests for distributions, activity regarding substitution of the corporate trustee began to take place. The Elliott Creditors and the Chapter 7 Trustee contend that this activity evidences the fact that the Debtor possessed sufficient control over the Marital Trust to remove it from spendthrift status. In this regard, the objectors contend that the Debtor caused the corporate trustee to be substituted

---

[17] Mr. Gerstein passed away on November 29, 2005. (See Ex. 48).

from Bessemer to PNC when she became dissatisfied with the denials for distributions. However, the circumstances surrounding the substitution of the corporate trustee appear to be disputed and were not sufficiently clear to the Court. To the extent that it was the Debtor who, in fact, initiated such substitution, that fact would actually suggest a <u>lack</u> of dominion and control over the Marital Trust. If the Debtor had possessed dominion and control over the Marital Trust, there would have been no need for a substitution of the corporate trustee as the corporate trustee would have been the Debtor's mere puppet. But, that is not the case here. While a request for substitution of trustee may suggest dissatisfaction with the corporate trustee, it does not necessarily evidence dominion and control over the Marital Trust in this instance.[18]

The Elliott Creditors and Trustee next contend that the Debtor possessed dominion and control thereby negating the spendthrift nature of the Marital Trust based upon a power of appointment relating to one-fifth of the Marital Trust. The power of appointment granted to the Debtor is set forth at Article TENTH at Subdivision (B)(3)(A) which provides:

---

[18] The Court does recognize that the Marital Trust did not specifically provide for (or address) the potential of a trustee substitution for the corporate trustee. Under Florida common law, in the absence of authorization derived from the trust itself, a trustee could resign only upon consent of all the beneficiaries or pursuant to court order. <u>See</u> The Florida Bar CLE 3-1, Barry F. Spivey, RESIGNATION, REMOVAL AND APPOINTMENT OF SUCCESSOR TRUSTEES, §3.2 - §3.5; <u>see</u> <u>also</u> F.S.A. §736.0705(1). In this instance, the Court of Common Pleas of Allegheny County, PA entered an order of court allowing for such resignation and substitution upon the filing of a petition by the Debtor. (<u>See</u> Ex. 77). In addition, Bessemer did not oppose the substitution and executed a Consent and Joinder to the petition filed by the Debtor. (<u>See</u> Ex. 76).

On the death of my wife, my trustees shall:

(3) deal with the balance of the principal of the Marital Trust as provided in subparagraphs (a) and (b) of this paragraph (3):

> (a) My trustees shall distribute or otherwise deal with one-fifth of such balance as my wife shall, by her last will duly admitted to probate and not otherwise, direct and appoint. The power of appointment hereby granted to my wife shall be exercisable by her alone and in all events and shall be exercisable in favor of her estate or in any other way. No will of my wife shall be effective to exercise such power, however, unless it shall contain a reference to the specific power and express the intent to exercise it.

Ex. 1, Article TENTH, Subdivision(B)(3)(a).

The power of appointment set forth in the will is a general testamentary power of appointment. A general power of appointment, as opposed to a limited or special one, allows for the exercise of the appointment by the powerholder in favor of anyone, including the powerholder's own estate. A power is testamentary when it is exercisable only by will. To exercise the power in the Barton Will, the Debtor's own will must also include specific language referencing the power and her intent to exercise such power. The will must then be filed of record.

The facts of this case are that the Debtor is not able to presently exercise the power of appointment to or for her own benefit although it may be exercised for the benefit of the Debtor's estate upon her death or for her creditors.[19]  The

---

[19]  Bankruptcy Code Section 541(a) provides that with certain exceptions, property of the estate includes all "legal and equitable interests of the debtor as of the commencement of the case". 11 U.S.C. §541(a)(1). Among the exceptions is "any power that the debtor may exercise solely for the benefit of an entity other than the debtor". 11 U.S.C. §541(b)(1).  Because the Debtor can exercise the power of appointment over one-fifth of the Marital Trust in favor of her own estate, it cannot be said that the benefit would solely be for one *other than* the debtor.

(continued...)

Debtor cannot presently access one-fifth of the funds in Marital Trust by way of the power of appointment.  Apparently, the Debtor has executed a will which includes a beneficiary of the appointive property.

Florida law has held that a power of appointment does not create an interest in property on the part of the "donee" who has the power to exercise the appointment.  Rather, the donee acts as a "mere agent" to dispose of property of the donor but with no property interest. See In re Wylie's Estate, 342 So. 2d 996 (Fla. App. 1977)(testamentary power of appointment was mandate or authority to dispose of property and not property interest included for calculating fees based on gross estate) see also e.g., 72 C.J.S. Powers §1; Krausse v. Barton, 430 S.W. 2d 44 (Tex. App. 1968); Forbes v. Snow, 140 N.E. 418, 421 (Mass. 1923).  In the course of finding that no property interest was created by the testamentary power, the court in Wylie stated that the analysis of whether a general power of appointment creates a property interest depends upon "the facts of the case, and for what purpose that power is being evaluated." Id. at 999.

The Wylie court also acknowledged that the conclusion that a donee acts as a "mere agent" had been subject to question by commentators. Id. at 998. The issue arises in the context when creditors seek to collect from the donee of a power of appointment that is presently exercisable.  In such circumstances, courts

---

[19](...continued)
Therefore, the exception in section 541(b)(1) is not applicable.

have held that trust assets may fall within property of the estate since the donee has ready and immediate access to the appointive property. See e.g., Moore v. Phillips (In re Phillips), 411 B.R. 467 (Bankr. S.D. Ga. 2008); Yellin v. Gilroy (In re Gilroy), 235 B.R. 512 (Bankr. D. Mass. 1999); 5 COLLIER ON BANKRUPTCY ¶541.17 (16th ed. rev. 2010).   However, where the power of appointment has not yet been exercised (and cannot be exercised presently), creditors are unable to reach the assets. See REST. PROP. §327. Nor can creditors reach the assets where the power of appointment is a special power, i.e. is restrained to a limited group that does not include the donee or the donee's estate. See 11 U.S.C. §541(b)(1); 5 COLLIER ON BANKRUPTCY ¶541.17 (16th ed. rev. 2010).   There is no Florida case cited by the parties that holds contrary to the Wylie holding that the donee does not have a property interest in the appointive property by virtue of a general testamentary power of appointment.[20]

Pursuant to the Wylie case, this Court looks to the Debtor's "privilege" under Florida law to dispose of property of another for the purpose of determining

---

[20] But within the context of bankruptcy, it is arguable that 11 U.S.C. 541(c)(2) does not extend to exclude a general testamentary power of appointment from property of the estate resulting in the appointment power itself being included in the estate. See Marie Rolling-Tarbox, POWERS OF APPOINTMENT UNDER THE BANKRUPTCY CODE: A FOCUS ON GENERAL TESTAMENTARY POWERS, 72 Iowa L. Rev. 1041, 1051-51 (1987); see also Peter Spero, FRAUDULENT TRANSFERS: APPLICATION AND IMPLICATIONS §7:32. Were such a power of appointment to come into the estate, the Trustee would not have any greater interest in the power of appointment than the Debtor. That is, the trustee would be bound by the same restrictions as the donee/beneficiary. Such testamentary restrictions would leave the bankruptcy estate in a peculiar position. The trustee would then have to keep the case open until such time as the death of the debtor/donee or abandon the asset to close the case. Either approach results in an untenable quandary for the bankruptcy estate. See 72 Iowa L. Rev. 1041, 1055 - 1061.

whether it creates dominion and control of the Marital Trust.  The purpose of a general testamentary power of appointment is to effectuate the donor's intent to have his or her property appointed at the time of the donee's death. Having the appointment exercisable only at the time of the donee's death allows time for the donee's selection to formulate.  See Wood v. American Sec. & Trust Co., 253 F. Supp. 592 (D.D.C. 1966).  Therefore, the power is only exercised upon the probating of the will and, in this instance, only if the will contains the appropriate language exercising the power as required by the Barton Will.  Thus, even if Debtor has already designated an appointee of the property, this may be subject to revocation or amendment.  Debtor's appointment could even by rendered invalid after it is exercised based upon the relevant law.  Therefore, this Court finds under the facts and circumstances of this case, the testamentary appointment power does not create dominion and control over the Marital Trust sufficient to defeat the spendthrift nature of the trust.

## VII.

For all of the above reasons set forth above, the Court finds that the Marital Trust established by the will of the late Sydney M. Barton to benefit the Debtor, Jayne Kiesewetter, contains a valid spendthrift provision.  The spendthrift nature of the Marital Trust has not been rendered invalid or ineffective by: (1) the other provisions contained within the Will;  or (2) the conduct of the Debtor or other co-trustees of the Trust; or (3) the one-fifth power of appointment.  The Court reaches

these conclusions because the Debtor simply does not exercise sufficient dominion and control over the trust that would defeat the spendthrift nature of the Marital Trust.  Therefore, pursuant to 11 U.S.C. §541(c)(2), the trust is not property of the Debtor's bankruptcy estate.

Because the Marital Trust is not property of the estate, the Debtor's interest income derived from the Marital Trust is exempt from property of this estate - at least during the period of time <u>before</u> it is actually distributed to the Debtor.[21]

*[Remainder of page intentionally left blank.]*

---

[21]  Indeed, Florida statutory law generally provides that a creditor or assignee of a beneficiary may not "reach the interest or a distribution by the trustee before receipt of the interest or distribution by the beneficiary."  F.S.A. §736.0502(3).  However, once a beneficiary has received or is entitled to receive the distribution, there is no longer any spendthrift protection.  <u>See</u> <u>Miller v. Kresser</u>, 34 So. 3d at 176.  Accordingly, upon receipt by the Debtor of distributions, those funds may be subject to garnishment, attachment or other legal procedure.

For the above reasons, the Court shall overrule the Objection to Amended

Exemption filed by the Chapter 7 Trustee at Doc. #170 and the Objection to

Amended Exemptions filed by Constance K. Elliott, Patricia J. Kiesewetter, Linton

A. Elliott, Jonathan B. Elliott and Charles L. Elliott at Doc. #172.

An appropriate order shall be entered.

Dated: November 29, 2010

_____
Jeffery A. Deller
U.S. Bankruptcy Judge

case administrator to serve:

Carlota M. Bohm, Esq.
Ronald L. Hicks, Jr., Esq.
Robert O Lampl, Esq.
Gary P. Hunt, Esq.
Office of U.S. Trustee

**FILED**

NOV 2 9 2010

CLERK U.S. BANKRUPTCY COURT
WEST DIST. OF PENNSYLVANIA

00005111.WPD

27

**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | Bankruptcy No. 05-38469-JAD |
| | ) | |
| Debtor. | ) | Chapter 7 |
| ——————————————— | X | |
| | ) | |
| CONSTANCE K. ELLIOTT; | ) | Doc. Nos. 170, 172 |
| PATRICIA J. KIESEWETTER; | ) | |
| LINTON A. ELLIOTT; JONATHAN | ) | |
| B. ELLIOTT; and CHARLES L. | ) | |
| ELLIOTT, | ) | |
|     Movants, | ) | |
|   - v - | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | |
| | ) | |
|     Respondent, | ) | |
| ——————————————— | X | |
| CARLOTA M. BOHM, TRUSTEE FOR | ) | |
| THE ESTATE OF JAYNE H. | ) | |
| KIESEWETTER, | ) | |
| | ) | |
|     Movant, | ) | |
| | ) | |
|   - v - | ) | |
| | ) | |
| JAYNE H. KIESEWETTER, | ) | |
| | ) | |
|     Respondent. | ) | |
| ——————————————— | X | |

**ORDER OF COURT**

**AND NOW**, this 29th day of **November, 2010**, for the reasons expressed in

the Memorandum Opinion entered simultaneously, the Court hereby **ORDERS,**

**ADJUDGES** and **DECREES** that: (1) the Objection to Amended Exemption filed

00005111.WPD

Carlota M. Bohm, Trustee of the Estate of Jayne H. Kiesewetter is **OVERRULED;**

and (2) the Objection to Amended Exemptions filed by Constance K. Elliott,

Patricia J. Kiesewetter, Linton A. Elliott, Jonathan B. Elliott, Charles L. Elliott is

hereby **OVERRULED**.

11·29·2010

_____

Jeffery A. Deller
U.S. Bankruptcy Judge

case administrator to serve:

Carlota M. Bohm, Esq.
Ronald L. Hicks, Jr., Esq.
Robert O Lampl, Esq.
Gary P. Hunt, Esq.
Office of U.S. Trustee

**FILED**

NOV 29 2010

CLERK U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA

00005111.WPD                              2