IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: Jayne H. Kiesewetter | ) | |
| | ) | Civil Action No. 11-109 |
| Debtor. | ) | |
| | ) | |
| Constance K. Elliott, *et. al.* | ) | |
| | ) | |
| Appellants, | ) | (Appeal related to Bankruptcy Case |
| | ) | No. 05-38469) |
| v. | ) | |
| | ) | |
| PNC Bank, National Association, | ) | |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION

CONTI, District Judge.

### *Introduction*

Pending before the court is an appeal by appellants Constance K. Elliott, *et. al.*

("Elliott Creditors" or "appellants") from an order of the bankruptcy court dated

November 29, 2010. (Memorandum Opinion and Order ("Mem. Op.") (ECF No. 1-1).)

The bankruptcy court overruled the Elliott Creditors' objections to the amended

exemptions claimed by Jayne H. Kiesewetter ("Debtor"). (Id.)  After considering the

submissions of the parties, the November 29, 2010 order of the bankruptcy court is

affirmed because the court concludes that the trust ("Marital Trust") is spendthrift in

nature, and, therefore, precludes Debtor's interests in the Marital Trust from becoming

part of the bankruptcy estate.

*Background*

The Marital Trust that is the subject of this dispute was created by the will of

Debtor's former husband, the late Sydney M. Barton. (Appellants' Br. (ECF No. 5) at 12;

Appellants' App. (ECF No. 6) at 6.)[1]  On July 1, 1982, Mr. Barton a Last Will and

Testament, and on March 10, 1983, he executed a Codicil (collectively, "Barton Will").

The Barton Will was recorded in the state of Florida. (Appellants' Br. (ECF No. 5) at 12;

Appellants' App. (ECF No. 6) at 58.)  The Marital Trust was created in Article TENTH

of the Barton Will. (Appellants' Br. (ECF No. 5) at 12; Appellants' App. (ECF No. 6-1)

at 5-7.)  The Barton Will provided that Debtor should receive the interest income

generated by the Marital Trust principal at least quarter annually for her life. (Appellants'

Br. (ECF No. 5) at 12; Appellants' App. (ECF No. 6-1) at 5-6.)  Debtor was named a

trustee under the Barton Will.  (Appellants' Br. (ECF No. 5) at 13.)  Distributions of

principal can be made to Debtor at the discretion of the other co-trustees, which included

a corporate trustee and Herbert Gerstein. (Appellee's Br. (ECF No. 14) at 11.)  Article

FOURTEENTH of the Barton Will contains a spendthrift clause, which applies to all the

trusts created by the Barton Will and restrains transfer of a beneficiary's interest in the

income or principal of the trusts established thereunder. (Appellants' App. (ECF No. 6-1)

at 15-16.)

The Elliott Creditors are siblings and nephews of William B. Kiesewetter, Jr.,

Debtor's current husband. (Appellants' Br. (ECF No. 5) at 11.)  In 2003, the Elliott

Creditors obtained judgments against Debtor and her husband concerning the

---

[1] Unless otherwise noted, all ECF citations refer to the United States District Court for the Western District of Pennsylvania's docket.

misappropriation of Kiesewetter family assets via an accounting and fraudulent transfer.

(Id.)  The associated litigation between these parties has spanned in excess of fifteen

years. (Mem. Op. (ECF No. 1-1) at 2.)

On October 14, 2005 ("Petition Date"), Debtor filed a voluntary Chapter 11

petition ("Petition"). (Id.; Appellants' App. (ECF No. 6) at 3-4.)  As of that date the

Elliott Creditors' claim against Debtor totaled $7,426,807.03. (Mem. Op. (ECF No. 1-1)

at 2.)  Debtor filed supporting schedules on November 15, 2005, (Appellants' App. (ECF

No. 6) at 5), including a schedule C claiming that the Marital trust was exempt pursuant

to 11 U.S.C. § 541 and FLA. STAT. § 222.13[2] and the federal exemptions provided by 11

U.S.C. § 522. (Mem. Op. (ECF No. 1-1) at 3.)  On March 26, 2007, Debtor's Chapter 11

case was converted to a Chapter 7 case (liquidation), and on July 30, 2007, Debtor filed

an amended schedule C to her Petition. (Id.)  The amended schedule C listed the trust

principal as $2.3 million, and sought to exempt Debtor's interest in the Marital Trust

income and principal pursuant to 11 U.S.C. § 522, based on exemptions under Florida

common law. (Id.)

---

[2] Debtor claimed an exemption for the Marital Trust based on this statute, although it explicitly exempts
only life insurance proceeds:

> (1) Whenever any person residing in the state shall die leaving insurance on his or her
> life, the said insurance shall inure exclusively to the benefit of the person for whose use
> and benefit such insurance is designated in the policy, and the proceeds thereof shall be
> exempt from the claims of creditors of the insured unless the insurance policy or a valid
> assignment thereof provides otherwise. Notwithstanding the foregoing, whenever the
> insurance, by designation or otherwise, is payable to the insured or to the insured's estate
> or to his or her executors, administrators, or assigns, the insurance proceeds shall become
> a part of the insured's estate for all purposes and shall be administered by the personal
> representative of the estate of the insured in accordance with the probate laws of the state
> in like manner as other assets of the insured's estate.

FLA. STAT. § 222.13.

The Elliott Creditors filed objections to the initial and amended exemptions respectively on May 2, 2007 and August 24, 2007. (Appellants' Br. (ECF No. 5) at 11.) On September 15, 2009, the bankruptcy court scheduled a trial on the objections for February 26, 2010. (Id.) On January 19, 2010, the bankruptcy court granted the intervention of PNC Bank, National Association[3] ("PNC" or "appellee"), and the trial was rescheduled for May 14, 2010. (Id.)  A post-trial hearing was held on July 30, 2010. (Id.)  On November 29, 2010, the bankruptcy court overruled the Elliott Creditors' objections to the amended exemptions, and on December 10, 2010, the Elliott Creditors appealed the decision of the bankruptcy court. (Id.)

### Standard of Review

Pursuant to 28 U.S.C § 158(a), this court has jurisdiction over the appeal from the final order of the bankruptcy court dated November 29, 2010.  In reviewing the decision of a bankruptcy court, a district court applies a clearly erroneous standard to findings of fact and a plenary standard to legal conclusions. In re Sharon Steel Corp., 871 F.2d 1217, 1222 (3d Cir. 1989).  Mixed questions of law and fact are reviewed by applying the appropriate standard to each component. Id.

### Discussion

## I. The Burden of Proof

Pursuant to 11 U.S.C. § 541(a), upon filing a bankruptcy petition, all of a debtor's legal and equitable property interests become part of the bankruptcy estate, unless they are excluded by 11 U.S.C. § 541(b) or 11 U.S.C. §541 (c)(2).[4]  The bankruptcy estate

---

[3] In October 2007, after the original corporate trustee resigned, PNC became a trustee under the Barton Will.  (Appellants' Br. (ECF No. 5) at 21.)
[4] Section 541(a) provides that property of the estate includes "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

may acquire more property postpetition pursuant to 11 U.S.C. § 541(a)(5).  Under

Section 541(a)(5), the bankruptcy estate includes "any interest in property that would

have been property of the estate if such interest had been an interest of the debtor on the

[petition date], and that the debtor acquires or becomes entitled to acquire within 180

days after such date" (1) by bequest devise or inheritance, (2) as a result of a divorce

settlement or decree, or (3) as a beneficiary of a life insurance policy or death benefit

plan. 11 U.S.C. § 541(a)(5).  Property included in the bankruptcy estate is subject to

claims of exemption under 11 U.S.C. § 522, which allows certain property interests of the

bankruptcy estate under Section 541 to be kept from the reach of the debtor's creditors.

11 U.S.C. § 522.

As discussed above, certain property is *excluded*[5] from the bankruptcy estate

pursuant to 11 U.S.C. § 541(c)(2); in other words, that property never becomes part of the

bankruptcy estate.  Section 541(c)(2) excludes, inter alia, a debtor's interest in a

spendthrift trust by providing that restrictions on the alienation of a debtor's beneficial

interest in property that would be enforceable under applicable nonbankruptcy law[6] are

also enforceable under bankruptcy law.  Patterson v. Shumate, 504 U.S. 753, 762 (1992)

(noting Congress intended "applicable nonbankruptcy law" to include state spendthrift

laws); In re Ciano, 433 B.R. 431, 433-35 (Bankr. N.D. Fla. 2010) (excluding a spendthrift

trust from the bankruptcy estate under Section 541(c)(2)).  The burden of proof lies with

the debtor to demonstrate that her interests in a spendthrift trust are excluded from the

---

[5] *Exclusions* under Section 541(c)(2) should not be confused with *exemptions* under Section 522.  A Section 541(c)(2) exclusion is a mechanism by which a debtor's interest in certain types of trusts are never included in the bankruptcy estate.  In contrast, a Section 522 exemption is a mechanism by which creditors are prevented from reaching portions of the bankruptcy estate during bankruptcy proceedings.
[6] The parties have agreed that the applicable nonbankruptcy law is Florida law based on the settlor's citizenship and the place where the trust was established, recorded and administered.  (Mem. Op. (ECF No. 1-1) at 6.)

bankruptcy estate. <u>Rhiel v. Adams</u> (<u>In re Adams</u>), 302 B.R. 535, 540 (B.A.P. 6th Cir.

2003).

Under 11 U.S.C. § 541(a)(5)(A), if a debtor is entitled to distributions of income

from a testamentary spendthrift trust within 180 days of filing a bankruptcy petition, any

such distribution becomes part of the bankruptcy estate postpetition. <u>In re Hunter</u>, 261

B.R. 789, 792-93 (Bankr. M.D. Fla. 2001); <u>see</u> <u>In re Moody</u>, 837 F.2d 719 (5th Cir.

1988). As with any other part of the bankruptcy estate, if a debtor wants to protect such a

postpetition distribution of income from his or her creditors, the debtor must assert an

exemption under 11 U.S.C. § 522.[7] The debtor does not have the burden to prove a

claimed exemption is appropriate.[8] <u>See</u> <u>Lester v. Storey</u> (<u>In re Lester</u>), 141 B.R. 157, 161

(Bankr. S.D. Ohio 1991). It is the party *objecting* to any claimed Section 522 exemptions

who has the burden of proving those exemptions are improper. FED. R. BANKR. P.

4003(c).

In this case the burden of proof lay with Debtor to demonstrate that the spendthrift

provision of the Barton Will was valid under Florida law and, therefore, that her interests

in the Marital Trust were *excluded* from the estate pursuant to 11 U.S.C. § 541(c)(2).

Because Debtor became entitled to distributions of income from the Marital Trust by

"bequest, devise, or inheritance" within 180 days of filing her Petition, any such income

was included in the bankruptcy estate postpetition pursuant to Section 541(a)(5)(A). <u>In re</u>

<u>Hunter</u>, 261 B.R. at 792-93; <u>cf.</u> <u>In re Ciano</u>, 433 B.R. at 435-36 (holding Section

---

[7] Although the Elliot Creditors correctly point out that interest protected as a spendthrift trust is not
included in the list of exemptions under Section 522(d), this assertion is irrelevant because Florida has
opted out of the federal exemption regime under Section 522(d), and because Debtor is claiming the
interest exempt based on state or local law pursuant to Section 522(b)(3)(A). FLA. STAT. § 222.20;
(Appellants' App. (ECF No. 6) at 31-32.)

[8] Exemption statutes are liberally construed in favor of a debtor. <u>See</u> <u>Doethlaff v. Penn Mut. Life Ins. Co.</u>,
117 F.2d 582, 584 (6th Cir. 1941).

541(a)(5)(A) inapplicable to inter vivos trusts as opposed to testamentary trusts, because payments from inter vivos trusts are not received as a result of a death). Debtor's amended schedule C claims her interest in the distributions of income as *exempted* under Section 522 based on the Florida common law of spendthrift trusts. (Appellants' App. (ECF No. 6) at 31-32.) The Elliott Creditors, who objected to that exemption, bore the burden of proving that the Section 522 exemptions taken by Debtor in the postpetition property brought into the bankruptcy estate pursuant to § 541(a)(5)(A) were not proper. [9] FED. R. BANKR. P. 4003(c).

Here, the bankruptcy court correctly applied the appropriate burdens of proof. The Marital Trust's corpus was claimed by Debtor to be excluded under § 541(c)(2), putting the burden on Debtor to prove the validity of the spendthrift provision of the Barton Will with respect to the corpus. Debtor's claim of exemption regarding postpetition distributions pursuant to Section 522(b)(3)(A) falls under Rule 4003(c), placing the burden on the Elliott Creditors to demonstrate that the claimed exemption was improper. [10] FED. R. BANKR. P. 4003(c).

## II. The Barton Will Establishes the Marital Trust as a Valid Spendthrift Trust[11]

---

[9] Whether state law allows exemption of assets under Section 522(b)(3)(A) based on spendthrift provisions is the Elliott Creditors' burden to prove or disprove, as the burden lies with them to prove that Debtor's claimed exemptions are improper once such claims are made. See FED R. BANKR. P. 4003(c).

[10] Although this appeal is couched in terms of an objection to an exemption, the fundamental issue on appeal is whether the Marital Trust income and principal are part of the bankruptcy estate and, therefore, reachable by the Elliott Creditors. See In re Ciano, 433 B.R. at 433 n.1 ("Because the bankruptcy forms do not provide a means for indicating that property interests of the debtor are excluded from the estate, as opposed to exempt from the estate, the debtor listed the asset as exempt in Schedule C to indicate that it should not be liquidated by the trustee."). Whether Debtor's interest in the Marital Trust income is claimed as excluded along with the trust principal under Section 541(c)(2), or as exempt under Section 522(b)(3)(A) based on Florida law on spendthrift trusts, the evidence regarding the validity of the spendthrift provision would be the same. See id.; see also In re Kelleher, 12 B.R. 896, 897 (Bankr. M.D. Fla. 1981) (holding spendthrift trust assets excluded from the bankruptcy estate regardless of whether claimed exemption was proper). To the extent the burdens of proof were incorrectly applied in the bankruptcy court, such errors would have been harmless error. See 28 U.S.C. § 2111.

[11] As an alternative to its claim that the Marital Trust contains a valid spendthrift provision, PNC argues that the Marital Trust is a discretionary trust, excluding the trust principle and exempting the trust income

Spendthrift trusts protect a beneficiary from his creditors and himself via express provisions forbidding anticipatory alienations of the beneficiary's interest in the trust, or attachments by creditors. Philp v. Trainor, 100 So. 2d 181, 186-87 (Fla. Dist. Ct. App. 1958). These trusts are "created with a view of providing a fund for the maintenance of another, and at the same time securing it against his own improvidence or incapacity for self-protection." Croom  v. Ocala Plumbing & Elec. Co., 57 So. 243, 244 (Fla. 1911); see Bacardi v. White, 463 So. 2d 218, 221 (Fla. 1985). Therefore, a valid spendthrift provision will prohibit a beneficiary from transferring his interest in the trust and will bar the beneficiary's creditors or assignees from reaching any interest in or distribution from the trust, at least until such interest or distribution is received by the beneficiary. Miller v. Kresser, 34 So. 3d 172, 175 (Fla. Dist. Ct. App. 2010).

Florida law recognizes the validity of spendthrift trusts. Id.; Waterbury v. Munn, 32 So. 2d 603, 605 (Fla. 1947); see Preston v. City Nat'l Bank of Miami, 294 So. 2d 11, 13-14 (Fla. Dist. Ct. App. 1974); In re Esterson, 150 B.R. 72, 74 (Bankr. M.D. Fla. 1993). No magic words are required to create a spendthrift trust so long as the settlor manifests an intent to restrain a beneficiary from transferring his or her interest in the trust. Putney v. May (In re May), 83 B.R. 812, 814 (Bankr. M.D. Fla. 1988). Express provisions forbidding the alienation or attachment of the beneficiary's interests are enforced as valid spendthrift clauses under Florida law so long as the beneficiary cannot exercise absolute dominion and control over the trust assets by compelling distributions

---

from the bankruptcy estate. (Appellee's Br. (ECF No. 14) at 22-23.) Because this court has concluded the spendthrift provision is valid, the court need not address the alternative argument regarding discretionary trusts.

or terminating the trust.[12] In re Cattafi, 237 B.R. 853, 856 (Bankr. M.D. Fla. 1999);

Schwen v. Ramette (In re Schwen), 240 B.R. 754, 757 (Bankr. D. Minn. 1999) (applying

Florida law); In re Nichols, 42 B.R. 772, 776 (Bankr. M.D. Fla. 1984) ("[W]here a debtor

has the power to terminate the trust or reach the trust corpus to give him virtually

absolute dominion over the trust, a spendthrift clause does not secure the property from

the creditors.").  A beneficiary's control over any part of the trust assets determines the

extent to which a spendthrift provision is invalid, and courts will allow a creditor to

attach that portion over which the beneficiary has express control. See Miller, 34 So. 3d

at 175.  If a valid spendthrift provision exists over the entire trust, both the beneficiary

and his creditors will be prevented from forcing an assignment to pay the beneficiary's

debts. Waterbury, 32 So. 2d at 605.  Under Florida law, creditors may, however, reach

any interest or distribution from a trust that has been received by the beneficiary. FLA.

STAT. §§ 736.0502(3), 736.0506(2); Miller, 34 So. 3d at 175.

Subdivision (C) of Article FOURTEENTH of the Barton Will sets forth a

spendthrift provision which applies to the Marital Trust and to other trusts created by the

Barton Will. (Appellants' App. (ECF No. 6-1) at 15-16.)  The relevant provision of the

Barton Will provides:

> Except as otherwise provided herein, the right of
> any person to receive any amount, whether of income or of
> principal, pursuant to any of the provisions of this will shall
> not, in any manner, be anticipated, alienated, assigned or
> encumbered and shall not be subject to any legal process or

---

[12] While the current Florida Trust Code requires that a spendthrift provision prohibit both voluntary and
involuntary transfers of a beneficiary's interests, this requirement is not applicable to trusts executed prior
to the Florida Trust Code becoming effective on July 1, 2007. FLA. STAT. § 736.0502(2).  Accordingly,
this provision does not apply to the Marital Trust, which was executed prior to 2007.  The standard for the
spendthrift provision in this case provides that it restrict either voluntary or involuntary alienation of the
beneficiary's interests in the trust, pursuant to Florida common law in place before the Florida Trust Code
was enacted. In re Ciano, 433 B.R. at 434.

> bankruptcy or insolvency proceeding or to interference or
> control by creditors or others.

(Id.)  This provision expressly prohibits voluntary alienation and involuntary assignment of a beneficiary's interests in the principal or interest of each of the trusts created by the Barton Will. ( Id.); see In re Ciano, 433 B.R. at 433-34 (holding a trust instrument (1) to prohibit voluntary transfers of interest by "providing that the beneficiary's interest could not in any way be 'pledged, assigned, sold, transferred, alienated, encumbered, or anticipated,'" and (2) to prohibit involuntary transfers by "providing that the interest shall not be subject to the 'debts, liabilities, or obligations of such beneficiary or claims of any sort'").  The settlor's intent to restrain the trust beneficiaries' ability to alienate their interest in the Barton Will trusts is manifest, which indicates the settlor intended to create valid spendthrift trusts by operation of this provision.[13] (See Appellants' App. (ECF No. 6-1) at 15-16.)

Based on its manifest intent, Article FOURTEENTH of the Barton Will contains a valid spendthrift provision that will prevent the alienation or transfer of Debtor's interests in the Marital Trust income and principal. See Waterbury, 32 So. 2d at 605 (validating express spendthrift provisions forbidding the alienation or attachment of a beneficiary's interests).  Therefore, the Elliott Creditors will not be able to reach Debtor's interest in income or principal of the Marital Trust so long as the rest of the Barton Will does not give Debtor the power to exercise absolute dominion and control over the

---

[13] Because this provision applies to all the trusts created by the Barton Will, it demonstrates Mr. Barton's intent to provide spendthrift protection to the Marital Trust and to the other trusts created for Mr. Barton's daughter and two grandchildren.  While the terms establishing these separate trusts impact the validity of the spendthrift clause with respect to each trust, see Croom, 57 So. at 244-45 (noting that other provisions of a deed can undermine an otherwise spendthrift clause), they are immaterial to the application of the spendthrift provision itself to all the trusts under the Barton Will.  Therefore, the Elliot Creditor's argument, discussed more fully in Section III.A.1 infra, that the differing provisions establishing each of those trusts indicates that the Marital Trust was not intended to be spendthrift in nature is unfounded.

Marital Trust assets.  In re Cattafi, 237 B.R. at 856 (holding that under Florida law a spendthrift trust will be valid unless the beneficiary can exercise absolute dominion and control over the trust assets or terminate the trust).

### III. The Spendthrift Provision is Valid with Respect to the Marital Trust Assets Because the Terms of the Barton Will Do Not Give Debtor Dominion or Control Over the Distribution or Transfer of the Marital Trust

Under Florida law the protection offered by spendthrift provisions can be invalidated by a Debtor's ability to exercise dominion and control over trust assets.  In re Cattafi, 237 B.R. at 856; Croom, 57 So. at 244-45 (holding that the creditors could reach trust assets despite presence of a spendthrift provision because the beneficiaries virtually had absolute control over trust property).  If a beneficiary has control over the disposition of a trust, the interests of the trustee and beneficiary merge and the doctrine of merger applies to terminate the trust. Contella v. Contella, 559 So. 2d 1217, 1219 (Fla. Dist. Ct. App. 1990); see 18 FLA. PRAC., LAW OF TRUSTS § 14:2(a).  The issue here is whether Debtor exercised sufficient control over her interests in the Marital Trust so as to defeat the spendthrift nature of the trust.  The Elliott Creditors point to a number of factors which they assert as proof that Debtor had enough control over the trust assets to invalidate the spendthrift provision.  These assertions will be discussed in turn.

### A. Neither the Actual or Potential Conditions Arising from the Terms of the Barton Will Give Debtor Sufficient Control over the Marital Trust to Invalidate the Spendthrift Provision

#### 1. Certain provisions of the Barton Will

The Elliott Creditors first contend that the terms establishing the Marital Trust demonstrate that the Marital Trust was not intended to be a spendthrift trust. (Appellants' Br. (ECF No. 5) at 36.)  Their contention is based upon the Marital Trust provisions that

mandate distributions of income to Debtor and make Debtor both a beneficiary and co-trustee of the trust. (Id.)  The Elliott Creditors argue that these terms of the Marital Trust give Debtor sufficient control over the Marital Trust to invalidate the spendthrift provision. (Id.)  They contrast the Marital Trust with the other trusts established by the Barton Will for Mr. Barton's daughter and two grandchildren (the "Descendant Trusts"), which provide for only discretionary distributions and do not make the beneficiaries co-trustees. (Id.)  The Elliott Creditors maintain that these juxtaposing terms of the Marital and Descendant Trusts demonstrate that Mr. Barton did not intend to dispossess Debtor of the disposition and control of the Marital Trust because, had that been his intent, he would have made the terms of the Marital Trust mirror those of the Descendant Trusts. (Id.)  The bankruptcy court was unpersuaded by this argument, noting that the standard for creating a spendthrift trust is a clause restraining the transfer of a beneficiary's interest in the trust. (Mem. Op. (ECF No. 1-1) at 10.)  The bankruptcy court agreed with PNC that the plain language of Article FOURTEENTH of the Barton Will contains such a restraint on transfer, and held that provision of the Barton Will served to establish the Marital Trust as a spendthrift trust regardless of the differing terms of the Marital Trust and the Descendant Trusts.[14] (Id.)

This court is satisfied that the terms establishing the Marital Trust do not undermine the trust's spendthrift protection.  First, a trust beneficiary serving as a co-trustee will not invalidate a spendthrift provision per se. McCauley v. Hersloff (In re

---

[14] The Elliott Creditors are correct in their assertion that other provisions of a will containing a spendthrift clause can invalidate the spendthrift clause. See, e.g., Croom, 57 So. at 244-45.  This invalidation, however, stems from other provisions which allow the beneficiary to transfer his or her interest, thereby undermining the spendthrift clause, and not from the terms of separate trusts in which the beneficiary does not have an interest. See, e.g., id. (noting that a provision against alienation of the beneficiary's interest in the trust is the standard for assessing a spendthrift trust).

Hersloff), 147 B.R. 262, 266 (Bankr. M.D. Fla. 1992); accord Vellacott v. Murphy, 16 F.2d 700, 701 (5th Cir. 1927) (holding a spendthrift trust to be valid where two of the three trustees were also beneficiaries).  It follows that Debtor serving as a co-trustee to the Marital Trust does not by itself undermine the spendthrift protection for the Marital Trust's principal.

With respect to the mandatory income distributions from the Marital Trust, while it is true that Debtor's entitlement to quarter-annual payments of net income is not subject to trustee discretion, this entitlement does not give Debtor control over these distributions. The mandatory interest payments remain subject to the spendthrift provision in Article FOURTEENTH of the Barton Will.[15] (Appellants' App. (ECF No. 6-1) at 15.)  This provision expressly applies to prohibit anticipatory transfers of the interest and principal of all the trusts created by the Barton Will. (Id.)  Debtor is thus properly restrained from transferring her interests in any future distributions owed to her from the Marital Trust, whether of income or principal. (Id.)

This language in the Marital Trust distinguishes this case from Putney v. May (In re May), 83 B.R. 812, 815 (Bankr. M.D. Fla. 1988), wherein the terms of the trust did not contain a spendthrift restriction prohibiting the beneficiary from transferring his interest in income distributions before they were received.  Where a spendthrift provision exists and specifically limits the beneficiary's ability to transfer both the corpus and income of the trust, the future right to receive income is protected by the terms of the spendthrift

---

[15] Subdivision (C) of Article FOURTEENTH states that "the right of any person to receive any amount, whether of income or of principal, pursuant to any of the provisions of this will shall not, in any manner, be anticipated, alienated, assigned or encumbered and shall not be subject to any legal process or bankruptcy or insolvency proceeding or to interference or control by creditors or others." (Appellants' App. (ECF No. 6-1) at 15.)

clause.[16] In re Hersloff, 147 B.R. at 266. Therefore, Debtor's right to receive mandatory

distributions of income from the Marital Trust does not invalidate the spendthrift

provision with respect to the trust income. Id.; see Waterbury, 32 So. 3d at 605 (noting

that "typical spendthrift trust[s]" involve a right to recover income, which is nonetheless

inalienable). For these reasons, this court is unpersuaded that the actual terms

establishing the Marital Trust invalidate its spendthrift protection.

Furthermore, because there is a valid spendthrift provision protecting the future

income distributions to Debtor, all *future* mandatory distributions to which Debtor is

entitled[17] are excluded from the bankruptcy estate pursuant to Section 541(c)(2). 11

U.S.C. § 541(c)(2); see Philp, 100 So. 2d at 187. Pursuant to Section 541(a)(5)(A), the

bankruptcy estate, however, will include any distribution that had been received

prepetition by Debtor and those distributions that she was entitled to receive within 180

days of the Petition Date. 11 U.S.C. § 541(a)(5)(A); Miller, 34 So. 3d at 175 (noting that

distributions from a spendthrift trust are reachable by creditors once paid to the

beneficiary). Because the Barton Will calls for quarter-annual mandatory distributions of

income, at least two mandatory payments of income should have been made to Debtor

within the 180-day postpetition period. (Appellants' App. (ECF No. 6-1) at 5.) Once

those mandatory distributions were made, they lost their spendthrift protection. See

Miller, 34 So. 3d at 175-76. Therefore, Debtor's claim of spendthrift exemption under

11. U.S.C. § 522 as to any *distributed* payments Debtor received or was entitled to

---

[16] Protection of future mandatory distributions of income is in fact customary of spendthrift trusts because it allows for trust distributions to provide a fund for the maintenance of the beneficiary while simultaneously securing the trust against his own improvidence. See Waterbury, 32 So. 3d at 605.

[17] The Elliott Creditors argue that, under Miller, creditors can reach distributions that a beneficiary has received or "'has the express right to receive.'" (Appellants' Br. (ECF No. 5) at 40 (quoting Miller, 34 So. 3d at 175).) This holding, however does not apply to *future* distributions of income but only to those mandatory distributions to which the beneficiary is presently entitled but which have not been timely distributed by the trustees. Miller, 34 So.3d at 175.

receive within 180 days of the Petition Date becomes ineffective and those payments become part of the bankruptcy estate. FLA. STAT. § 736.0502(3).

### 2.  Powers granted to Defendant under the Barton Will

The Elliott Creditors point to the potential powers of Debtor under the terms of the Barton Will as invalidating the spendthrift provision. (Appellants' Br. (ECF No. 5) at 35-36, 44-46.)  Specifically, the Elliott Creditors take issue with the application of Paragraph ONE of the Codicil to the Barton Will, which provides in relevant part: "I appoint my wife, ELIZABETH JAYNE BARTON ("my wife"), HERBERT GERSTEIN, and BESSEMER TRUST COMPANY OF FLORIDA,[18] *or such one or more of them as shall from time to time be available and willing to serve,* as personal representatives of this will and trustees of each trust created hereunder." (Appellants' App. (ECF No. 6-1) at 23 (emphasis added).)

The Elliott Creditors argue that this "one or more" provision creates the potential for Debtor to become the sole trustee of the Marital Trust.[19] (Appellants' Br. (ECF No. 5) at 36.)  They assert that the operation of this provision would give Debtor dominion and control over the Marital Trust when coupled with the enumerated powers of the trustees outlined in Article FOURTEENTH(A)(1)-(4), (14)-(17), and (21)-(24) of the Barton

---

[18] Bessemer Trust Company of Florida, the named corporate trustee of the Marital Trust, was replaced by PNC in October 2007.  (Appellants' Br. (ECF No. 5) at 21.)

[19] The Elliott Creditors base this argument on the fact that a trustee may resign without court approval under FLA. STAT. § 736.0705, and a trustee may be removed by the other co-trustees with court approval under FLA. STAT. § 736.0706.  The Barton Will does not require replacement of a resigning trustee, (see Appellants' App. (ECF No. 6) at 59), and Florida law does not require the replacement of a trustee who has resigned or been removed. See FLA. STAT. § 736.0704.  Therefore, the Elliott Creditors maintain that should PNC resign as the corporate trustee and not be replaced, Debtor would be left as the sole trustee and would be able to direct distributions of the trusts created by the Barton Will by operation of the "one or more" clause.

Will[20] and with the trustees' ability to make discretionary distributions of principal from the Marital Trust. (Id.)  The Elliott Creditors maintain these powers would allow Debtor, as the sole trustee, to invade the Marital Trust principal, demand more frequent payments of income, and potentially to terminate the trust.  Therefore, they argue that the "one or more" provision invalidates the spendthrift clause and provides them access to the trust corpus. (Appellants' Br. (ECF No. 5) at 35-36, 44-46.)  PNC argues that the "one or more" clause is irrelevant because as of the Petition Date, Debtor was not sole trustee of the trust, and that even in the instance Debtor became the sole trustee, she still would not obtain sufficient dominion and control over the Marital Trust. (Appellee's Br. (ECF No. 14) at 32-33.)

The bankruptcy court disagreed with the Elliott Creditors on this point, finding that the enumerated powers did not impact the antialienation provision of the Marital Trust or allow even a sole trustee to direct payments for his or her own benefit. (Mem. Op. (ECF No. 1-1) at 13.)  The bankruptcy court noted that the potential for Debtor to become sole trustee was too remote to consider. (Id. at 12, n.8.)  Even in that instance, because Debtor may not participate in making distributions to herself as a co-trustee, she, however, would be similarly limited as sole trustee and would not gain sufficient control over the Marital Trust. (Id. at 13.) Therefore, the bankruptcy court held that neither the trustees' enumerated powers nor their ability to make discretionary distributions gave Debtor

---

[20] The Elliott Creditors note specifically those powers allowing the trustees to sell, lease or improve property ((1)-(4)), to exercise rights of election for tax purposes, make principal payment in kind or in money ((14)-(17)), "to apply for the benefit of any person any amount, whether of income or of principal, which under any provisions of this will could be paid directly to him" and "generally to exercise in respect of any property any power which an absolute owner of such property would have" ((21)-(24)). (Appellants' Br. (ECF No. 5) at 35; see Appellants' App. (ECF No. 6-1) at 12-15.)

sufficient dominion over the Marital Trust to invalidate the spendthrift provision, even in the face of the "one or more" clause. (Id. at 12-13.)

Although a debtor's role as a beneficiary and co-trustee of a trust does not *per se* invalidate a spendthrift provision, the ability of a beneficiary to exercise control over a trust will render a spendthrift clause ineffective. In re Hersloff, 147 B.R. at 265 (applying Maryland law but noting Florida law is identical regarding the validity of spendthrift trusts). In bankruptcy proceedings, the debtor's degree of control over the spendthrift trust is often the primary consideration in determining its validity. Kaplan v. Primerit Bank (In re Kaplan), 97 B.R. 572, 577 (B.A.P. 9th Cir. 1989); see also In re Gillett, 46 B.R. 642, 644 (Bankr. S.D. Fla. 1985) (noting the level of dominion and control that a beneficiary is able to exert may invalidate a spendthrift trust). This court concludes that any potential power Debtor may gain over the Marital Trust as the sole trustee, either via the enumerated powers or her position as a co-trustee, is insufficient to demonstrate a level of dominion and control that would invalidate the Marital Trust's spendthrift protection.

The Florida Supreme Court has held that a spendthrift trust is inadequate where the trust's beneficiaries are given "such absolute dominion over the property as to vest in them . . . the right to require the trustees, upon their bare request, to convey any part or the whole of the property either to them or their assigns." Croom, 57 So. at 244-45. This standard reflects a public policy concern against allowing a person to protect his property from creditors while retaining an unfettered right to enjoy it himself. In re Hersloff, 147 B.R. at 265. Therefore, a beneficiary will be deemed to have "absolute" control over the trust when he or she has the ability to either force termination of the trust or to compel

distributions. <u>Miller</u>, 34 So. 3d at 175; <u>see</u> <u>Croom</u>, 57 So. at 244-45; <u>In re May</u>, 83 B.R. at

814.  Such "absolute dominion" gives the beneficiary an interest in the trust property

which he may alienate or assign, and therefore invalidates the spendthrift provision and

makes that property interest liable for the payment of his creditors. <u>Croom</u>, 57 So. at 244-

245 (citing <u>Wenzel v. Powder</u>, 59 A. 194, 195-96 (Md. 1904)).

In this case, the "one or more" clause does not invalidate the spendthrift clause

based on any potential ability Debtor may obtain to terminate the trust or to compel

distributions.  This court affirms the bankruptcy court's finding that, although a

possibility may exist in the future for the number and identity of trustees to change,

leaving Debtor in control of the trust, that possibility is too remote to be a significant

factor in the instant case. (<u>See</u> Mem. Op. (ECF No. 1-1) at 12, n.8.)  Moreover, the

determination of what constitutes property of the estate is based on the circumstances at

the time of filing. <u>In re Hersloff</u>, 147 B.R. at 266 (citing <u>Lockhart v. Garden City Bank &

Trust Co.</u>, 116 F.2d 658, 659 (2d Cir. 1940)); <u>see also</u> <u>Medwedeff v. Fisher</u>, 17 A.2d 141,

144 (Md. 1941) (holding a spendthrift trust valid as of the bankruptcy proceedings

despite the potential for the trust to expire fifteen months after the petition was filed).

Debtor was not the sole trustee of the Barton Will as of the Petition Date, and

Subdivision (G) of Article SECOND of the Codicil of the Barton Will requires decisions

regarding the administration of the will be made by a "majority vote" of the acting

trustees. (Appellants' App. (ECF No. 6-1) at 23.)  Debtor consequently may not presently

unilaterally dictate principal distributions or terminate the Marital Trust, and an

"otherwise valid spendthrift trust will not be disallowed . . . merely because the

beneficiary happens to represent a minority of the voting trustees." <u>In re Hersloff</u>, 147

B.R. at 265.  Therefore, as of the Petition Date Debtor's overlapping roles as beneficiary

and co-trustee did not invalidate the spendthrift provision.

Even considering Debtor's ability potentially to become sole trustee after the

Petition Date, Debtor would not be able to attain sufficient control over the Marital Trust

to invalidate the spendthrift provision with regard to that trust.  In order for a beneficiary

to exercise control over a trust, he or she "must be free to make distributions without

breaching any duty." In re Schwen, 240 B.R. at 758; see In re Hersloff, 147 B.R. at 265.

The Marital Trust prohibits Debtor from having control over principal distributions made

to herself.[21]  (Appellants' App. (ECF No. 6-1) at 5-6 ("My trustees shall . . . pay to my

wife . . . so much, including the whole or a lesser part, of the principal of the Marital

Trust as my trustees (*other than my wife*) shall . . . deem necessary or advisable. . . ."

(emphasis added)).)  The "majority vote" clause of the Codicil of the Barton Will states

specifically that any decision must be made by a majority vote "[of] those trustees

*entitled to participate therein*." (Appellants' App. (ECF No. 6-1) at 23 (emphasis

added).)  Based on these provisions, even if Debtor were the sole trustee, she would not

be able to control distributions from or to terminate the Marital Trust without breaching a

duty under the Barton Will because she is not entitled to participate in such decisions

regarding the Marital Trust.[22] (Appellant's App. (ECF No. 6-1) at 5-6, 23.)  Debtor

---

[21] Under the Bankruptcy Code, a power is deemed exercised in favor of a debtor even if it is used for the direct benefit of another so long as it "is capable of conferring benefit on the Debtor also." 11 U.S.C. § 541(b)(1); see RICHARD R. POWELL, 3 POWELL ON REAL PROPERTY § 33.05 (2010); see also Drummond v. Cowles, 278 F. Supp. 546, 549-50 (D. Conn. 1968).  The Marital Trust's prohibition on Debtor's distribution of principal "to herself" also prohibits Debtor from directing any distributions to be paid to her creditors.

[22] Although Debtor is not expressly prohibited from participating in decisions about the frequency of mandatory income distributions, this does not impact the amount of money she can receive from the trust, only the percentage of the trust income received per mandatory distribution. Debtor does not have the power to terminate the trust or execute distributions of principal. Even if Debtor became the sole trustee, her ability to alter the frequency of income payments would not give her sufficient dominion and control

would be similarly unable to exercise any of the enumerated powers in Article

FOURTEENTH for her own benefit without breaching the terms of the Marital Trust. (Id.

at 5-6.)  Thus, even as the sole trustee, Debtor would remain unable to compel

distributions of principal or terminate the Marital Trust, and would not gain "absolute

dominion" over the Marital Trust. Croom, 57 So. at 244-45.  Any potential power Debtor

would have as the sole trustee would not invalidate the spendthrift provision with respect

to the Marital Trust's income or principal.

The existence of a discretionary maintenance and support standard[23] over principal

distributions from the Marital Trust adds another layer to Debtor's duties under the

Barton Will and Florida law.    As a trustee, Debtor must "exercise a discretionary power

in good faith and in accordance with the terms and purposes of the trust." FLA. STAT. §

736.0814(1).  Under Florida law, a person who is both a beneficiary and trustee may not

"make discretionary distributions of either principal or income to or for the benefit of that

trustee, except to provide for that trustee's health, education, maintenance, or support."

FLA. STAT. § 736.0814(2)(a).  Thus, the discretionary standard set forth in Article

TENTH of the Barton Will limits the extent of Debtor's control over the Marital Trust,

even if she were to become the sole trustee and was not precluded by the terms of the

Barton Will from participating in those decisions.  With regard to the principal, her

fiduciary duties would prohibit her from making distributions in the absence of a need for

maintenance or support.

---

over the Marital Trust to invalidate the spendthrift provision. See In re Nichols, 42 B.R. at 776 (a
beneficiary has absolute dominion over a trust where he can compel distributions or terminate the trust).
[23] Subdivision (B) of Article TENTH of the Barton Will provides that the trustees of the Marital Trust other
than Debtor have "absolute discretion" to make distributions of the Marital Trust principal that they "deem
necessary or advisable for the maintenance, welfare, and comfort" of Debtor. (Appellants' App. (ECF No.
6-1) at 5-6.)

### 3. Testamentary power of appointment

The Elliott Creditors assert that the testamentary power of appointment given to Debtor in Subdivision (B)(3)(a) of Article TENTH of the Barton Will is a property interest included in the bankruptcy estate.  That provision of the Barton Will provides that on the death of Debtor, the trustees shall:

> (3) deal with the balance of the principal of the Marital Trust as provided in subparagraphs (a) and (b) of this paragraph (3):
>
> > (a) My trustees shall distribute or otherwise deal with one-fifth of such balance as my wife shall, by her last will duly admitted to probate and not otherwise, direct and appoint. The power of appointment hereby granted to my wife shall be exercisable by her alone and in all events and shall be exercisable in favor of her estate or in any other way. No will of my wife shall be effective to exercise such power, however, unless it shall contain a reference to the specific power and express the intent to exercise it.

(Appellants' App. (ECF No. 6-1) at 6-7.)  This power of appointment is exercisable by Debtor in her will, and is exercisable in favor of anyone, including Debtor's estate, her creditors, or the creditors of her estate. (See id.)  The parties agree Debtor has a general testamentary power of appointment. (Appellants' Br. (ECF No. 5-1) at 6; Appellee's Br. (ECF No. 14) at 43); see 26 U.S.C. § 2041.  For the purposes of this appeal, the Elliott Creditors do not argue that this power of appointment gives Debtor sufficient dominion over the Marital Trust to invalidate the trust's spendthrift provision and allow attachment of the Marital Trust principal. (Appellants' Br. (ECF No. 5-1) at 3-4.)  They instead assert that, as of the Petition Date, Debtor had a property interest in the power of appointment with a hypothetical value of $480,000 that should be included in the bankruptcy estate. (Id.)

Section 541(a) of the Bankruptcy Code provides that, with some exceptions, property of the estate includes all "legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).  Because this power is exercisable in favor of Debtor, it is not excluded from the estate under Bankruptcy Code § 541(b)(1), which excludes from the bankruptcy estate "any power that the debtor may exercise solely for the benefit of an entity other than the debtor ." 11 U.S.C. § 541(b)(1).  The Elliott Creditors assert that this interest is not protected by the spendthrift clause under Florida law and therefore is not excluded from the estate under § 541(c)(2). (Appellants' Br. (ECF No. 5-1) at 3-6.)  The Elliott Creditors argue the power of appointment is a property interest of Debtor at the time of filing that is neither excluded nor exempted from the estate, and that it consequently constitutes property of the estate under 11 U.S.C. § 541(a)(1). (Id.)  PNC maintains that Debtor's power of appointment does not invalidate the spendthrift clause and is therefore protected by it, and that even disregarding the spendthrift clause, Debtor does not have a property interest in the one-fifth power of appointment sufficient to bring it into the bankruptcy estate under Section 541(a)(1). (Appellee's Br. (ECF No. 14) at 41-42.)

The bankruptcy court found that Debtor's general testamentary power of appointment did not constitute dominion and control over the Marital Trust sufficient to invalidate the spendthrift provision, and this issue was not appealed. (Mem. Op. (ECF No. 1-1) at 25; Appellants' Br. (ECF No. 5-1) at 3.)  The bankruptcy court found that the testamentary power of appointment was not presently exercisable as of the Petition Date and that Debtor, who had no property interest herself, was a "mere agent" to dispose of the property. (Mem. Op. (ECF No. 1-1) at 22-24.)  The court held that under Florida law,

a power of appointment does not create a property interest on the part of the donee of the

appointment power. (Id.)

The issue here is whether Debtor has an attachable interest in the power of

appointment as of the Petition Date. (Appellants' Br. (ECF No. 5-1) at 3-4.)  Though

federal law "defines what types of property comprise the estate, state law generally

determines what interest, if any, a debtor has in the property." In re O'Dowd, 233 F.3d

197, 202 (3d Cir. 2000).  For support from state law in their assertion of Debtor's

attachable interest in the power of appointment, the Elliott Creditors point to a Florida

statute, which provides that "[a] valid spendthrift provision does not prevent the

appointment of interests through the exercise of a power of appointment." FLA. STAT. §

736.0502(4).  The Elliott Creditors maintain that this statute indicates general

testamentary powers of appointment constitute property of a bankruptcy estate regardless

of a valid spendthrift provision. (Appellants' Br. (ECF No. 5-1) at 6.)  This statute,

however, merely provides that a spendthrift provision will not *prevent* a power of

appointment from being exercised.  It does not speak to when or whether powers of

appointment are attachable under Florida law. See FLA. STAT. § 736.0502(4).

To that end, the Florida Trust Code incorporates the Florida common law of

trusts. FLA. STAT. § 736.0106.  The instructive decision on this point is In re Estate of

Wylie, 342 So. 2d 996 (Fla. Dist. Ct. App. 1977).  In Wylie, the court found that a

testamentary power of appointment created no property interest in the donee, the party

with the power to exercise the appointment.  In re Wylie, 342 So. 2d at 998-99.  Instead,

such a power represented "a mere mandate or authority to dispose of property and not an

interest in property itself." Id.  The court in Wylie held that the donee was a "mere

agent" directed to dispose of the donor's property, and that appointments of such property

constitute transfers to the appointee from the donor of the power, not from the donee.[24]

Id. (citing RESTATEMENT (THIRD) OF PROPERTY § 318, cmt. b (1940)).  The holding in

Wylie was followed in Smith v. Bank of Clearwater, 479 So. 2d 755, 757 (Fla. Dist. Ct.

App. 1985) (noting that property which is exposed to the exercise of a power of

appointment does not become part of the estate of the donee of the power).

　　　　The court in Wylie acknowledged that case law is unsettled regarding the concept

of donees acting as a "mere agents" and noted that "whether a general power of

appointment is to be viewed as a property interest . . . depends upon the facts of the case,

and for what purpose that power being evaluated." In re Wylie, 342 So. 2d at 999.

When a general power of appointment is presently exercisable by the donee, the donee

has immediate access to the appointive property such that some courts have found an

attachable property interest exists in the donee. See e.g., Moore v. Phillips (In re Phillips),

411 B.R. 467, 468-73 (Bankr. S.D. Ga. 2008) (involving a testamentary power of

appointment in the remainder of a trust that could be terminated by the grantee at any

time).  A general testamentary power of appointment, however, when it is not presently

exercisable by a living donee, does not, by itself, vest any interest in the donee of the

power. See United States v. Field, 255 U.S. 257, 259 (1921).  In this case, Debtor's

power to appoint one-fifth of the Marital Trust in her will is not exercisable as of the

Petition Date. (Appellants' App. (ECF No. 6-1) at 6.)  As a result, Debtor does not have

---

[24] As the power of appointment is virtually an offer from the donor's estate that the donee can accept or reject at will, it may be that the interest in the power does vest in the donee when he exercises the power, even if it thereafter passes instantly to the appointee. See Gilman v. Bell, 99 Ill. 144, 150-51 (1881) ("[W]hen [the donee] exercises the power, he thereby consents to receive it, and the title thereby vests in him, although it may pass out of him eo instanti, to the appointee."). This distinction, however, is immaterial here, as Debtor has not yet exercised her power of appointment with regard to the Marital Trust.

immediate access to the appointive property to give her the equivalent of ownership of

the property. Restatement (Third) Trusts § 56, cmt. b (2003)[25]; see Id. § 58, cmt.

b(1)[26]. Debtor does not have a property interest in the power of appointment that would

bring it into the bankruptcy estate under § 541(a)(1). See In re Wylie, 342 So. 2d at 998-

99.

### B. The Documented Conduct Surrounding the Distribution of the Marital Trust Does Not Demonstrate a Level of Control by Debtor Sufficient to Invalidate the Spendthrift Provision of the Barton Will

The Elliott Creditors maintain that even if nothing in the Barton Will allows Debtor

to exercise dominion and control over the Marital Trust, the conduct of Debtor and the

co-trustees of the Marital Trust evidences Debtor's dominion and control over the Marital

Trust. (Appellants' Br. (ECF No. 5) at 37.) The Elliott Creditors point to Debtor's ability

---

[25] Section 56, Comment b provides:

> Trust property subject to a presently exercisable general power of appointment (a power by which the property may be appointed to the donee, including one in the form of a power of withdrawal), because of the power's equivalence to ownership, is treated as property of the donee of the power. It can therefore be subjected to the satisfaction of the claims of the donee's creditors. (This is and long has been the law under the federal Bankruptcy Act.) . . .
> …
> A general power to appoint only by will (or by other instrument that is revocable during life) does not give the donee the equivalent of ownership of the appointive assets. Hence, it does not enable creditors of the done to reach the trust remainder during the donee's lifetime.

Restatement (Third) Trusts § 56, cmt. b (2003).

[26] That comment provides:

> An intended spendthrift restraint is also invalid with respect to a nonsettlor's interests in trust property over which the beneficiary has the equivalent of ownership, entitling the beneficiary to demand immediate distribution of the property. Thus, if an income beneficiary also holds a presently exercisable general power of appointment (that is, a power currently to compel distribution of trust property to the power holder), a spendthrift restraint will not prevent the beneficiary's creditors or transferees from reaching the property that is subject to the power. (A general power exercisable only at death does not give a nonsettlor sole life beneficiary the equivalent of ownership for this purpose. . . .)

Restatement (Third) Trusts § 58, cmt. b(1) (2003).

to obtain loans from the Marital Trust, as well as her ability to use mandatory distributions of income from the trust as she wished without objection by the co-trustees. (Id.; Mem. Op. (ECF No. 1-1) at 14-20).  The Elliott Creditors argue that the circumstances surrounding the resignation and replacement of the corporate trustee of the Marital Trust indicate Debtor had control over the disposition of the trust. (Appellants' Br. (ECF No. 5-1) at 2.)  PNC responds that such conduct-centered arguments are not available under Florida law, and that only the terms contained within the four corners of the Barton Will can be considered. (Appellee's Br. (ECF No. 14) at 37.)  The bankruptcy court agreed with PNC's assertion that, even considering the documented conduct surrounding the distribution of the Marital Trust, there was no evidence that Debtor had sufficient control over the Marital Trust to invalidate the spendthrift provision. (Appellee's Br. (ECF No. 14) at 37; Mem. Op. (ECF No. 1-1) at 20-21.)

An antialienation clause can be rendered ineffective where a beneficiary has the ability to control distributions or to terminate the trust. Croom, 57 So. at 244-45; In re May, 83 B.R. at 814.  A spendthrift provision will be invalidated for that portion of a trust over which the beneficiary can exert control. See Miller, 34 So. 3d at 175.  In analyzing the conduct of the trustees of the Marital Trust, however, this court finds no evidence of Debtor's dominion and control over the trust income sufficient to defeat the spendthrift nature of the trust.

The former corporate trustee's allowing Debtor to obtain loans from the Marital Trust does not demonstrate dominion or control over the trust principal because Debtor did not have a right to compel such loans from the trust principal. (Appellants' App. (ECF No. 6-1) at 5, 12.)  Any loans were subject to the same discretionary standard as distributions of

principal and cannot be compelled by Debtor alone, and therefore did not invalidate the

spendthrift provision of the Marital Trust. See In re Hersloff, 147 B.R. at 265 (holding

spendthrift provision valid when debtor alone could not dictate distributions of principal).

Debtor's ability to use distributions of income and principal as she wished without

objection from the trustees does not demonstrate control over the Marital Trust.  Debtor

was unable to participate in the decision to make distributions to herself, and because

those distributions lose their spendthrift character when received by the beneficiary,

Debtor was in fact free to use the proceeds of the distributions as she saw fit.  Debtor's

using these payments as she did only indicates dominion and control over the distributed

payments, not over the Marital Trust itself. See Miller, 34 So. 3d at 176 (holding

creditors can reach only distributions after they are made); Croom, 57 So. at 245

("[W]hen one has an interest in property which he may alien or assign, that interest,

whether legal or equitable, is liable for the payment of his debts.").   There is record

evidence that several of Debtor's requests for distributions of principal were denied by

the other trustees of the Marital Trust. (Mem. Op. (ECF No. 1-1) at 16-17.)   These

denials demonstrate that Debtor did not have control over the disposition of the Marital

Trust.  See, e.g., In re Hersloff, 147 B.R. at 265 (citing a trustee's denial of a requested

distribution as evidence of the validity of a spendthrift trust).

Finally, the resignation of the former corporate trustee does not indicate that Debtor

had control over the distribution of the Marital Trust.  Had Debtor been in control of the

Marital Trust she would not have seen a need for the replacement of the corporate trustee.

If Debtor sought the substitution of the corporate trustee, it was likely the fact that her

requests for distributions were being denied that led her to do so. (Mem. Op. (ECF No. 1-

1) at 20-21.)  This court agrees with the bankruptcy court's determination that "[w]hile a request for substitution of trustee may suggest dissatisfaction with the corporate trustee, it does not necessarily evidence dominion and control over the Marital Trust in this instance." Id. at 21.  The court will also defer to the bankruptcy court's factual determination that the specific circumstances surrounding the substitution of corporate trustees were unclear. Id.

### *Conclusion*

For the reasons set forth above, this court holds that the Marital Trust of the Barton Will was established as a spendthrift trust.  The spendthrift provision is not invalidated by the language establishing the Marital Trust, by Debtor's one-fifth power of appointment, or by the documented conduct surrounding distributions from the Marital Trust.  None of these issues indicate Debtor has a sufficient level of dominion and control over the Marital Trust assets to undermine the spendthrift protection.  Consequently, both the income and principal of the Marital Trust are protected by the spendthrift clause of the Barton Will, except to the extent of distributions of income received or required to be made within 180 days of the Petition Date.  Furthermore, the one-fifth power of appointment, even if not subject to the spendthrift clause, is unattachable by the Elliott Creditors because it does not create a property interest in Debtor to be included in the bankruptcy estate.

Pursuant to 11 U.S.C. § 541(c)(2), the Marital Trust principal is excluded from the property of Debtor's bankruptcy estate.  The future income from the estate is exempt pursuant to Section 522, except to the extent of distributions of income received or

required to be made within 180 days of the Petition Date.  <u>See</u> 11 U.S.C. § 522(b)(3)(A);

FLA. STAT. § 736.0502(3).  The bankruptcy court's decision will be affirmed.


By the court,


 /s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge


Dated:   September 28, 2011